In re Myrle Arnold SIMON, Lorraine Edna Simon, Debtors.

In re Jim Myrle SIMON, Ardith Lee Simon, Debtors.

Bankruptcy Nos. 3–84–00754, 3–84–00755.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

June 7, 1985.

J. Brian O'Leary, Springfield, Minn., for plaintiff/petitioner.

Michael C. Karp, Mankato, Minn., for defendant/respondent.

ORDER

JOHN J. CONNELLY, Bankruptcy Judge.

This matter came before the court on the motion of Donald C. Schwaegerl, Donald Graff, and Esther Berg for an order determining the priority of claims. J. Brian O'Leary, attorney, appeared on behalf of the movants. Michael Karp, attorney, appeared on behalf of the debtors. Hendrik DeJong, attorney, appeared on behalf of Windom State Bank (hereinafter "the bank"). Now, upon all the files and records herein, briefs, and arguments of counsel, the court makes the following order pursuant to the Rules of Bankruptcy Procedure.

The debtors filed their request for relief under Chapter 13 of the Bankruptcy Code on April 25, 1984. Along with the petition the debtors filed a motion for use of cash collateral, which was heard by this court on May 9, 1984. At the May 9 hearing, the debtors' motion was denied "unless and/or

until the debtors file all their schedules and/or work out a stipulation on the use of cash collateral with the bank." Pursuant to this court's order dated June 15, 1984, the above-entitled Chapter 13 case was converted to a proceeding under Chapter 11.

Since the hearing held on May 9, 1984, no written stipulation regarding the use of cash collateral was ever filed with this court for approval. However, on November 30, 1984, the bank filed with the court a motion to enforce an unsigned cash collateral stipulation which was allegedly entered into between the bank and debtors. Since May 1, 1984, the debtors have made adequate protection payments to the bank in the amount of $2,500.00. Said amount was approved by this court pursuant to its order dated January 18, 1985. During the pendency of this case, the bank has received approximately $33,624.62 in adequate protection payments.

The bank claims it is entitled to a super priority pursuant to 11 U.S.C. § 507(b) due to the impairment of the bank's collateral position during the pendency of the above-entitled action, by reason of depreciation through use, depreciation due to a decline in market value, and by reason of accrual of interest on the bank's claims, which are secured by collateral in the possession of the debtors. The court does not agree.

## DISCUSSION

Section 507(b) provides that where adequate protection has been extended to a secured creditor whose claim is secured by a lien on property of the debtor which later proves to be inadequate, the creditor then becomes entitled to a super priority administrative expense claim to the extent that the proffered adequate protection was insufficient.

Although § 507(b) sets the criteria for which a creditor's claim shall be given priority over every other allowed unsecured claim (a super priority) a creditor must in the first instance ask for adequate protection to protect his interest in property from impairment in value. It is only upon the failure of adequate protection which has been provided to protect the interest of a holder of a claim secured by a lien on property of the debtor that a super priority claim arises. Thus, whereas adequate protection shields the creditor in the first instance from impairment in the value of his "interest in property," the super priority was intended to recapture value unexpectedly lost during the course of a case; "it establishes a statutory fail-safe system in recognition of the ultimate reality that protection previously determined the indubitable equivalent ... may later prove inadequate." *In re Callister*, 15 B.R. 521 (Bkrptcy.D.Utah, 1981).

In the instant case, the debtors filed a motion for use of cash collateral with this court on May 9, 1984. In their motion, the debtors proposed to sell 300 hogs, in which the bank claimed a security interest, and use the proceeds in the ordinary course of the debtors' business. A hearing on the debtors' motion was duly held by this court at which time the court denied the debtors' motion unless and/or until the debtors file all their schedules and work out a stipulation for use of cash collateral with the bank. Although no signed stipulation was ever filed or approved by this court, the record reflects that the debtors have paid the bank adequate protection payments in the approximate sum of $2,500.00 per month which commenced on or about May 1, 1984 through the time of this hearing, in return for the bank's allowance of the debtors' use of cash collateral.

The bank now asserts it is entitled to a super priority in all proceeds from the 1984 crop due to an impairment of its collateral position during the pendency of the above-entitled bankruptcy proceeding, by reason of depreciation in equipment, machinery, livestock, and accrual of interest on the bank's secured claim. However, the bank has failed to request, during the pendency of this case, protection of its interest in any of the collateral in the possession of the debtors with the exception of the debtors' use of cash collateral generated from the sale of pigs in which the bank claimed a security interest. Therefore, if the bank is

entitled to a super priority claim, it must rise, if at all, from the failure of the adequate protection payments paid by debtors to the bank to compensate for the loss of value resulting from debtors' use of cash collateral generated by the sale of pigs, all of which was the subject matter of the cash collateral motion.

 The bank is claiming a loss of value in the debtors' livestock of between $15,000.00 to $25,000.00. In addition, the bank has admitted to receiving approximately $33,624.62 in adequate protection payments pursuant to the "agreement" reached between the parties during the pendency of this case. It is clear, considering the facts in a light most favorable to the bank, that its position in regard to the debtors' livestock has been adequately protected since the adequate protection payments received exceed the amount claimed as lost by the bank. In addition, there is nothing to indicate to the court that a decrease in value has occurred, during the pendency of this proceeding, in the remainder of the bank's collateral in debtors' possession, or that the "agreement" between the parties contemplated the $2,500.00 per month adequate protection payments to compensate the bank for lost value in farm equipment, machinery, and accrual of interest on the bank's claim.

The bank's failure to protect other collateral in the possession of the debtors at the outset of these proceedings precludes it from doing so now by way of a super priority claim. As discussed above, a super priority is not intended as a substitute for adequate protection but is born when adequate protection fails.

The three movants in this action, Donald C. Schwaegerl, Donald Graff, and Esther Berg, furnished fuel, hail insurance, and rented land, respectively, to the debtors for use in raising and harvesting the 1984 crop. Pursuant to 11 U.S.C. § 503(b) these expenses were incurred in the ordinary course of the debtors' reorganization and as such should be considered expenses of administration to be paid along with

other expenses of administration pursuant to 11 U.S.C. § 507(a)(1).

ACCORDINGLY, IT IS HEREBY ORDERED:

1) That Windom State Bank's motion for a super priority expense claim in proceeds of the 1984 crop and from hog sales be and the same is hereby denied.

2) That the claims of Donald C. Schwaegerl, Donald Graff, and Esther Berg be allowed as administrative expense entitled to the same treatment as other administrative expense claims in this bankruptcy proceeding.